IN THE MATTER OF THE PETITION OF ANTHONY DUGRO TO VACATE AN ASSESSMENT FOR PAVING FIFTY-EIGHTH STREET, ETC., IN THE CITY OF NEW YORK.

The grant of power to the common council of the city of New York by the "Montgomerie charter," so called (Davies' Laws of N. Y., p. 177, § 16; Valentine's Laws, 228), to make and lay out streets, etc., in said city, and the authority conferred upon the municipal corporation to direct the pitching and paving of streets, and to assess the expense upon property benefited (Laws of 1813, chap. 86, § 175; 2 R. L., 407), gives the common council full discretion, save as curtailed or controlled by legislative action. They are the sole and exclusive judges as to the time, mode and manner of laying out, making, grading and paving streets, and also as to the material of which the streets shall be made, or with which they shall be paved. This discretion and choice being an important and valuable constituent of the power conferred, and being in the interests of the public, will not be deemed revoked by implication or doubtful inference.

Accordingly *held*, that the common council was not prohibited from making or paving a street in a manner or with a material not admitting of competitive bids or proposals by the provision of the "act to reorganize the local government of New York," which requires all work to be done and supplies to be furnished to be by contract, where the expenditures will exceed $1,000; and directs all contracts to be made or let, after advertisement, to the lowest bidder. (Laws of 1870, chap. 137, § 104.)

(Argued December 10, 1872; decided December 17, 1872.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, affirming an order of Special Term denying an application to vacate an assessment for paving Fifty-eighth street with Nicolson pavement, between Third avenue and Lexington avenue, in the city of New York.

The ground of the application was that the pavement was a patent pavement; and as it could not be made the subject of competitive bids, the contract for laying it violated section 104 of chapter 137, Laws of 1870, and was, therefore, void. The contract for the work was made in 1870, after the passage of the act. Advertisements for bids for the work were

duly published. Only one bid was received, which was from the president of the Nicolson Pavement Company, and the contract was let to that company at the prices named in the bid.

*Charles E. Miller* for the appellant. Under the charter of 1870, work and supplies, which cannot be made the subject of competition, cannot be contracted for by the corporation. (*Dean* v. *Charlton,* Wis. [N: S.], 564; Law, 1870, chap. 137, p. 371; 33 N. Y., 309, 328; Charter of 1870, § 104.)

*D. J. Dean* for the respondent. The provisions of the statute do not expressly, or by necessary implication, prohibit the corporation from purchasing a patented pavement. (*Harlem Gas-light Co.* v. *Mayor,* 33 N. Y., 330; *People* v. *Flagg,* 17 id., 584; *Hobert* v. *City of Detroit,* 7 Am. Law Reg., 741; Montgomerie Charter of 1730, *vide* §§ 14, 16; Valentine's Laws, 225, 228; *Astor* v. *The Mayor,* N. Y. Transcript, February 8, 1869; opinion by INGRAHAM, J.)

ALLEN, J. Among the general powers vested in the common council of the city of New York, is that of "making and laying out all the streets, lanes, alleys and highways in and throughout the said city, the island of Manhattan, in such manner as the said common council for the time being, or the major part of them, shall think or judge to be necessary and convenient for all inhabitants and travelers there." (Montgomerie charter, § 16; Davies' Laws of N. Y., 177.) This grant of power is of a public nature, and may be exercised by the common council at discretion, except as curtailed or controlled by legislative action. Intimately connected with this general power is the authority conferred upon the municipal corporation to order and direct the pitching and paving the streets of the city, and to assess the expense upon property benefited in proportion to the advantages resulting from the improvement. (2 R. L., 407, § 175.) These powers are conferred for public purposes, and while they are to be

exercised in conformity to legislative direction, and are subject to be revoked by the sovereign power, except as secured by constitutional inhibition, the common council may, save as restrained by and subject to the directions of the legislature, exercise their discretion feely as to the time, mode and manner of laying out, making, grading and paving streets, and also as to the material of which the streets shall be made, or with which they shall be paved. The common council are the sole and exclusive judges of the particular character of the streets and the quality and kind of pavement which the public interests require or will be most beneficial to the property intended to be benefited and liable to be assessed, as well as to what is "necessary and convenient for all inhabitants and travelers there." This discretion and choice, in all the respects mentioned, is an important and valuable constituent of the power conferred, and without it, the power itself would be defective, and the public service would be liable to suffer. Such discretion will not be deemed revoked by implication or doubtful inference. Acts directory in their character, although imperative so far as effect can be given them consistently with the exercise of the general powers conferred, cannot be regarded as indicative of an intent to curtail the power or limit the discretion of the common council, except in the matters and to the extent declared by such acts. The act of 1870, to reorganize the local government of the city of New York (chap. 137 of the Laws of 1870) expressly continues and reaffirms the grants, powers and privileges theretofore held by the municipalty, and not modified or repealed by the provisions of that act. Section 22 merely ordains that no taxes or assessments shall be imposed or debts contracted except as authorized by law, and that all the legislative power shall be subordinate to and be exercised in conformity with such grants, restrictions or limitations as were or might be prescribed by the legislature, and does not affect or impair the obligations or add to the sanctions of any statute. It is a declaration that statutory powers must be exercised in subordination and conformity to

the statute creating them. Section 104 of the act is relied upon as a limitation upon the powers of the common council to the extent of a prohibition to undertake any work, or order or direct the making or paving any street, in a manner or with a material which will not admit of competitive bids or proposals. It requires all work to be done and supplies to be furnished by contract when the expenditure will exceed $1,000, and directs all contracts to be made or let after an advertisement for proposals, and to the lowest bidder.

The statute was complied with, in that the proper officers of the city did advertise for bids or proposals for paving the street, and the contract was let to the only bidder, and at the price named in the bid. The objection is that the "Nicolson pavement" was patented, and the right to lay it was in a single person or corporation, and that therefore the advertisement being for bids to pave the street with that particular pavement, there could be no competition, and the form of advertising for and receiving bids and acting upon them was but a form, and was not and could not be a compliance with the act looking to competition, and it is claimed that the contract based upon the proceedings was void, and the assessment for the work therefore illegal. It is urged that because a statute prescribing general rules for the exercise of the powers granted to the municipal corporation are not in all their detail applicable to every case that may arise, that, to the extent they cannot be applied, the powers are annulled and cannot be exercised. This would be to give undue effect to the act prescribing the forms of procedure, and modal in its character, at the expense of the general grant of power. Whether the corporate authorities could or should have known that there could be no possible competition for the work (if such was the fact, which is not entirely certain), and, knowing that, could or should have made a contract without advertising for bids, need not be considered. There is no pretence of fraud, or that the contract, as made, was not a provident and proper contract, and reasonable and right in all its terms and provisions, so that the form of advertising and receiving bids can-

not vitiate it, even if no such procedure was necessary. The general rule is, and this case does not form an exception, that statutes prescribing forms of procedure, and providing for the orderly conduct of proceedings by public officers or bodies, are only obligatory to the extent, and in cases to which they are by their terms applicable. The legislature cannot be presumed to have intended to declare that no power should be exercised, or work done, or supplies furnished, unless of a character that would admit of competitive bids. The grant of power was for public purposes, and the discretion vested in the common council was in the interests of the public, and neither the public nor the parties to be benefited by local improvements can be deprived of the benefit of this discretion, or the right to the best or most improved pavements, because full effect cannot in a particular case be given to an act designed for another purpose, to wit, to regulate the exercise of, and not to limit the power. In other cases in this court a like statute, intended to accomplish the same purpose, that is, the performance of work and the furnishing of supplies at the lowest price and on the most favorable terms, although sufficiently broad in its terms to include the contracts and the services in question, was held not applicable to, and therefore as not embracing them. (*People* v. *Flagg*, 17 N. Y., 584; *Harlem Gas Co.* v. *Mayor of New York*, 33 id., 309.)

This case is not within the precise principle ruled in those cases, but it is quite analogous, and much of the reasoning of the judges who then spoke for the court is entirely applicable here. A thing within the letter is not within the statute, unless within the intention. The act of 1870 can have full effect in cases to which it can be applied, but if there are cases to which it could not be reasonably applied, they are not within the intention, and therefore not within the statute. It seems to be absurd to say that all powers and all authority is by necessary implication taken from the municipal authorities except such as can be exercised in strict conformity to this one provision of law—that this section of the law of 1870 is to be the touchstone to determine the limit and extent of

the powers vested in the common council, and that all other acts must conform to it.  It should rather be interpreted with respect to the other statutes to which it is ancillary.

The decisions of the courts in Wisconsin are adverse, while the Michigan courts are in accord with the views now expressed.  If, as alleged, there could be no competition for the paving with the Nicolson pavement, the common council had nevertheless the power to cause the street to be paved with it, and it is simply a case not within the statute, although the words are broad enough to include it.  It constitutes one of the necessary exceptions to it.  No other question was presented upon this appeal, the counsel in terms limiting the discussion to the operation and effect of the provisions of the act of 1870, requiring certain contracts to be given to the lowest bidder, after an advertisement for proposals.

No other ground for vacating the assessment was suggested orally or upon the printed brief, and this ground not being well taken, the order of the Supreme Court must be affirmed.

All concur, PECKHAM, J., not sitting.

Order affirmed.