# BERNICE McCOURT STARKS v. ALBERT OLIVER STARKS.[1]

July 6, 1945.

No. 33,963.

*Rodney A. Dunnette* and *Meighen, Knudson & Sturtz,* for appellant.

*Donald O. Wright,* for respondent.

[1]Reported in 19 N. W. (2d) 741.

314

LORING, CHIEF JUSTICE.

This was a suit for divorce. Plaintiff prevailed in the trial court, but comes here on appeal, aggrieved by that court's allowance of alimony. She also seeks to present to this court for review the refusal by the trial court, in the divorce proceedings, to receive detailed evidence of an accounting between herself and her husband. By her former attorneys who tried the case and presented the motion for a new trial, plaintiff moved for an amended finding that she be allowed $6,000 alimony instead of $3,500, or, in the alternative, for a new trial on the ground of errors of law, and that the findings were not justified by the evidence. The order denying the motion for an amended finding is not appealable.

Plaintiff's assignments of error in this court are five in number. The first four of them challenge the refusal by the trial court to receive evidence of the interest of the wife in the personal property upon the farm homestead and of her expenditures for improvements and repairs and in the creation and improvement of personal property thereon. The fifth assignment of error is on the refusal to award the wife alimony in the sum of $6,000.

■ The whole argument of plaintiff in support of the first four assignments of error appears to be based upon a colloquy that took place between the court and counsel for plaintiff on the cross-examination of defendant. It started out with reference to an AAA check, and it ran as follows:

"Q. All right. Do you remember this AAA check?

"A. No.

"Q. Where you had the AAA check—

"The Court: What is the purpose of this?

"[Counsel]: To show that this woman paid for everything he did for her in 1941 when he claims he was in the turkey business.

"The Court: What will the court do with that information? The turkeys are gone now.

"[Counsel]: I am trying to show, your Honor, through this that from the time they were married up until 1935 they were living on a 46-acre farm, that is, they could cultivate 46 acres. The court

knows without my telling him that they could not get off of 46 acres the money that was used to buy machinery and a tractor and automobiles, and he admits that she was in the turkey business. Therefore, it is her money that has gone into this machinery and the stuff that they have purchased.

"The Court: Granted that it is, what follows from that?

"[Counsel]: *I am claiming one-half interest in that equipment.* [Italics supplied.]

"The Court: Because it is her money?

"[Counsel]: Because it is her money.

"The Court: On the basis of the resulting trust?

"[Counsel]: That is the pleadings.

"The Court: Under our statute, even in real estate, we don't have a resulting trust when someone else pays for property that is in someone else's name.

"[Counsel]: No, but under our statute you have an interest in it.

"The Court: No, you don't. The statute expressly excludes an interest because of payment.

"[Counsel]: Well, it certainly would be enlightening to the court as to what this woman would be entitled to in this action.

"The Court: If they were not married the fact that she paid for part of it might lead to some inferences of title, but it is a long, long road for establishing separate ownership in farm property belonging to a farmer because his wife in her turkey business made some money and used it in the farm. Surely, *it shows no legal title. It shows no equitable title.* [Italics supplied.] The most one can find is, perhaps, some inferences of an intent to establish title, and if they were not married there might be some justification for it, but since they are married the justification is tenuous at least.

"[Counsel]: Would that be true of a loan from a husband to a wife?

"The Court: I don't know.

"[Counsel]: And this is the same situation.

"The Court: I am not sure it is. At any rate, the turkeys are gone and there is some farm property there. It is very remote.

"[Counsel]: We have this machinery and this farm machinery which her money purchased. That money or that property simply because of a change of property—the ownership of the rights in it are not lost simply by the change of identity. If that were true, then every time we bought a bond or anything else the thing would lose its identity. This is property and money that she had that she puts into this place. Now, then, the husband is holding this and can say to his wife, 'You get out.' It strikes us, your Honor, that we're going very far afield on the equitable side of this case if the wife can't be protected in some way.

"The Court: With a proper foundation, perhaps, but the mere spending of money for farm machinery to be used on a husband's farm does not justify the court in inferring that the wife has retained separate title to that farm machinery distinct from her husband."

All of this discussion occurred over the inquiry about the AAA check, upon which there was no specific ruling, and counsel went on with his cross-examination without making any objection or taking any exception to the court's statement of its position. From this conversation between the court and counsel, it clearly appears that it was the purpose of counsel to claim for plaintiff a one-half interest in the farm equipment and that finally the court indicated to counsel that, with a proper foundation, he could, perhaps, show such an interest, but that the mere spending of money by the wife for machinery to be used on the husband's farm did not justify an inference of title in the wife to the farm machinery. To this statement by the court no exception whatever was taken or objection made by counsel. Consequently, whether right or wrong, it is not before this court for review. Orderly procedure demands that some challenge, other than mere argument, be made to the court's ruling before there can be a review of the ruling in this court. Barnard v. County of Kandiyohi, 213 Minn. 100, 5 N. W. (2d) 317. Nor could error be assigned for the first time in the motion

for a new trial where no such challenge to the court's ruling was saved on the trial. (In the case at bar, no errors of law were specifically assigned in the motion for new trial.) Counsel for plaintiff accepted the court's ruling. Moreover, plaintiff testified at great length in her examination in chief as to how she contributed to the support of the family and the farm operations. In putting in her case in chief, her counsel expressly disclaimed that she was entitled to an accounting, and the court's position in regard to that was clearly stated. Counsel accepted it with the words "Very well." No objection or exception was taken; therefore, it will be seen that no ruling of the court was properly challenged on the trial; neither is any ruling properly presented here by the first four assignments of error, nor do they attack specific findings. The right to claim error not objected to or excepted to at the trial or properly assigned in this court is deemed waived. Schleuder v. Corey, 30 Minn. 501, 16 N. W. 401.

■ In this condition of the record, the only matter before us is the question whether the trial court abused its discretion in the award of alimony to plaintiff. No other finding is specifically challenged. Bladine v. Bladine, 158 Minn. 296, 197 N. W. 261; Hendrickson.v. Bannitz, 194 Minn. 528, 261 N. W. 189.

■ In a long line of cases in this court, among the last of which is Gerard v. Gerard, 216 Minn. 543, 13 N. W. (2d) 606, we have held that Minn. St. 1941, §§ 518.20 and 518.22 (Mason St. 1927, §§ 8600, 8602), invests the trial court with discretion, within the limits therein stated, as to the amount of alimony to be allowed in divorce cases and in the restoration to the wife of such part, as it deems just and reasonable, of the personal estate that has come to the husband by reason of the marriage, and that, in the absence of an abuse of such discretion, the trial court's award will not be disturbed.

We have examined the record, and, without detailing the evidence, we discover no abuse of discretion.

Plaintiff is allowed $250 attorneys' fees in this court on her appeal, and $291.30 expenses of this appeal.

Judgment affirmed.