CATHERINE M. PAYNE, APPELLANT, v. OSCAR B. CLARK, APPELLEE.

FILED JUNE 22, 1928. No. 25681.

*R. S. Mockett, H. W. Baird* and *Francis V. Robinson,* for appellant.

*Comstock & Comstock, contra.*

Heard before GOSS, C. J., ROSE, DEAN, THOMPSON, EBERLY and HOWELL, JJ., and REDICK, District Judge.

GOSS, C. J.

This is an action at law by plaintiff to recover of the defendant on three causes of action for money alleged to have been collected and retained by him while acting as her attorney and for certain damages alleged against him. Defendant filed answer and cross-petition praying for judgment for services rendered in addition to those for which compensation had already been received by him. The jury returned a verdict for plaintiff for one dollar and found against defendant on his cross-petition. From an order overruling her motion for a new trial and entering judgment on the verdict, the plaintiff appealed.

The appellant and appellee sustained the relation of client and attorney for nearly three years prior to July 18, 1922, when that relation ceased. He brought and conducted the suit for divorce against her husband in the district court, where she was unsuccessful, and on appeal in this court, where the cause was reversed by an opinion by the commission, adopted August 8, 1921, directing a judgment for absolute divorce and for alimony in the sum of $25,000, payable in ten equal annual instalments with interest at 6 per cent. In addition thereto, her attorney was allowed a fee of $1,500 in addition to all other allowances, to be taxed as costs. The total allowances for attorney's fees appear to have been $1,800. After the judgment was entered as directed, the attorney continued to represent the client in matters relating to the collection of her judgment and in the investment of the proceeds of her divorce suit, until July 18 or 19, 1922, when differences arose between them over money matters and he was discharged. In her first cause of action she charged that he had collected and

received a total of $1,800 as attorney's fee allowed in both courts, that he had retained $500 as fees out of a $2,000 collection on her account on August 13, 1921, and $4,665.24 on or about March 22, 1922; that said amounts were obtained by fraud, deceit and bad faith on defendant's part, and that the total of $6,965.24 constitute an excessive charge for services, by reason of which she prayed for treble damages on the alleged fraudulent items, or a total of $15,948.27, with interest on the first cause. For her second cause of action she alleged that on December 1, 1921, the defendant collected $500, part payment on a $2,000 note given as evidence of that sum loaned for her out of a collection of $2,500 on her alimony judgment on August 13, 1921. On that she asked $523.33 with interest. Her third cause of action was based on the charge that the defendant refused her demands made July 19 and 20, 1922, to surrender to her a will drawn for her by him in June or July, 1921, claiming he had delivered it to her soon after its execution. For this she prayed judgment for $25, as the reasonable cost of drafting another will.

The defendant joined issues by answer and cross-petition. He alleged the engagement by her on and prior to November 21, 1919, to procure a divorce and alimony from her husband, as well as to recover the possession of certain property she owned; that she represented she had no money to pay costs and attorney's fees and that she would, upon obtaining funds, amply and generously compensate him for his services and would reimburse him for advances; that he undertook said work, relying on said promise, and secured the reversal in the supreme court of the judgment of the trial court; that thereafter plaintiff assigned to defendant an amount equal to an interest of 20 per cent. of her recovery in the divorce action and authorized him to collect and enforce the payment; that he brought an equitable action to recover property in Douglas county and secured a settlement on the basis of plaintiff's claim; that he negotiated agreements with regard to several properties in the interest of the plaintiff, advanced

upwards of $1,100, which plaintiff has refused to pay. Defendant traverses the various allegations of the petition, sets up items claimed to be due him amounting to $4,074.88, and prays for an accounting and for judgment. The result was as stated at the beginning of this opinion.

The evidence is voluminous and it is a law case. It was submitted to the jury on conflicting evidence. It will suffice to state such of the evidence as appears necessary in a discussion of the errors assigned.

The 124 errors set up in the motion for new trial have been reduced to 22 in the assignment of errors in the brief of appellant. The first one relates to the second instruction given to the jury in the following language:

"Under the law and the evidence in this case it appears beyond dispute that the defendant received from the plaintiff on and before the 24th day of March, 1922, money and property of the value of $5,165.24 as an attorney's fee in the case of Payne v. Payne, and that he was not entitled to the same because he was fully paid for his services by award of fees made him in the supreme court, and because in any event the contract and assignment upon which he took the said $5,165.24 was void as against public policy unless said fee was given defendant by the plaintiff as an honorarium with full knowledge on her part that she was under no legal obligation to let him have the same and was in full possession of all of the facts in regard to her lawsuit and in regard to what her attorney had done in connection therewith.

"If you find by a preponderance of the evidence that said money and property received by the defendant was such gift or honorarium, and also that plaintiff is not entitled to recover on her second and third causes of action, you should find against the plaintiff upon her petition and proceed at once to the consideration of the cross-petition of the defendant. If on the other hand you find that such money and property received by the defendant was not given him as a mere honorarium or gift, you will find for the plaintiff upon her petition in at least the sum of $5,165.24, with

interest at the rate of 7 per cent. per annum from the 24th day of March, 1922. But of course she cannot have this recovery and also a recovery of triple damages as prayed."

Before discussing this instruction, we desire to call attention to subsequent assignments of error relating to five instructions requested by the court, in which the court was asked to instruct in substance: That an attorney is required to exercise the highest order of good faith and to inform a client of all facts in his possession which might influence the client to enter into or refuse to execute the contract in issue; that assignments or conveyances by client to attorney, while the relationship exists, are regarded with disfavor and are presumed to have been improperly secured; that there is a presumption of unfairness or invalidity attaching to a contract for compensation between attorney and client after the establishment of the relation; that the burden rests with the attorney to show that the contract was fair, just and equitable, and, in the absence of such proof, the transaction should be treated as constructively fraudulent; and, again in varied language, that dealings between an attorney and client are *prima facie* fraudulent.

To comprehend the relation of the instructions thus refused with the instruction given, it is necessary to realize to some extent what the evidence was in the matter of compensation to be made to the attorney for services. There was no agreed fee in advance and thus the implied contract was for reasonable compensation. The courts had evidently allowed as temporary and final attorney's fees a total of $1,800. There was testimony before the jury on behalf of defendant that, after the plaintiff had discussed the matter with others, she had signified an intention to pay him 50 per cent. of the amount realized on the judgment for alimony. On thinking it over, after the allowance of $25,-000 alimony by this court, she made up her mind to give him 35 per cent. But by the time they came together to consider the compensation she concluded that 20 per cent. was right and so she made an assignment in writing of

that proportion to him. Omitting the recital of the judgment against her husband and its inducing words, the remainder of the instrument follows:

"Therefore, in consideration of services rendered by O. B. Clark and his counsel to her through all of said litigation and all of her personal matters heretofore arising, the said Catherine M. Payne now assigns to the said O. B. Clark 20 per cent. of all moneys secured by her in the litigation growing out of the divorce action of the assignor against Charles T. Payne, and authorizes the said O. B. Clark to do all things with regard to collection and enforcement of payment of said judgments the same as assignor otherwise might.

"Catherine M. Payne."

The defendant had tried this instant case on the theory that he was entitled, in addition to the court allowances, to one-fifth of all property recovered for the plaintiff from her husband, and that this assignment assured such compensation. The plaintiff was seeking to destroy, in the mind of the jury, the force of the written assignment, and these requested instructions were directed toward that end. The trial court refused the requested instructions, not because they did not express correct rules of law, but because, in the view he took of the case, they did not go far enough. He went further and told the jury that the attorney had been fully paid for his services in the divorce case by the award of fees made in the supreme court. In any event, the court told them, by the instruction complained of, the contract and assignment was void as against public policy unless the fee of $5,165.24 was given by her to the defendant as an honorarium with full knowledge that she was not obliged to let him have it and in full possession of all the facts in regard to her lawsuit and what her attorney had done in connection therewith. Considerable space is devoted in the briefs to a discussion of the significance of the term *"honorarium"* in the instruction. The court evidently was using it in its general meaning of a voluntary donation or gift, as more fully explained

by the context. It seems to us that, if any one is in a position to complain of this, it is the defendant, and not the plaintiff. We do not wish to be understood, by quoting the instruction, to be commending it to be followed in similar cases, but we fail to see how the plaintiff was prejudiced by it or by the refusal to give the instructions offered by plaintiff. The defendant might have built up a more persuasive argument for error in the instruction, had the verdict and judgment aggrieved him. It is a well-known rule that, where instructions to the jury are requested and refused, but the instructions given by the court on his own motion have the same effect as those refused, error does not result therefrom. The doctrine applies here.

The next assignment of error, both in sequence and in importance, relates to alleged prejudicial remarks made by the trial judge. Counsel for defendant was pursuing a line of questions that seemed to be eliciting facts more in relation to the divorce suit than to the case on trial. Counsel for plaintiff objected "to this line of testimony as incompetent, irrelevant, immaterial, and not proper cross-examination." In sustaining this objection, the court made a statement consisting of about twenty lines, when printed. Counsel for plaintiff was perhaps so well satisfied with a favorable ruling on his objection already made that he voiced no objection whatever, as shown by the bill of exceptions, to the remarks of the court made in sustaining his said objection. If he had objected to the particular part of the statement of the court to which he now objects, the court would, in all probability, have withdrawn or modified it. Under the record in this case, error will not be predicated upon remarks made by the court, in the presence of the jury, when his attention was not then called to the matter by objection or otherwise, so as to give him a timely opportunity to correct the prejudicial effect, if any.

We find no other errors assigned that seem to us worthy of prolonging this discussion. On the whole, we are of the opinion that the case was tried with due regard for the rights of both plaintiff and defendant, was fairly submit-

ted to the jury with respect to the rights of the plaintiff, that there is no error in the record, and that the judgment of the district court is right and ought to be and is

AFFIRMED.